IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

| | |
|---|---|
| THOMAS DONVAL (a/k/a DONYAL THOMAS), ) ) ) | |
| Petitioner, ) | |
| ) | No. 05 C 1501 |
| v. ) | |
| ) | Judge Mark Filip |
| NEDRA CHANDLER, ) | |
| ) | |
| Respondent. ) | |

MEMORANDUM OPINION DISMISSING
PETITION FOR WRIT OF HABEAS CORPUS

Thomas Donval, who is also known as Donyal Thomas ("Petitioner" or "Donval"), has

filed a Petition for a Writ of Habeas Corpus against Respondent Nedra Chandler, who is the

Warden of the Dixon Correctional Center in Illinois. Petitioner challenges the constitutionality

of the state court conviction and judgment under which he is incarcerated. For the reasons

explained below, Donval's Petition for a writ of habeas corpus is respectfully denied.

BACKGROUND

Petitioner is imprisoned pursuant to a judgment of the Illinois courts. That judgment

followed a bench trial in which Petitioner was convicted of first-degree murder, aggravated

discharge of a firearm ("ADF"), aggravated battery with a firearm ("ABF"), mob action, and

aggravated battery. (D.E. 19, Ex. H at 6-7.) Petitioner was sentenced to thirty-five years'

imprisonment. (*Id.* at 7.)[1]

---

[1]    The facts are taken from the Illinois appellate court's resolution of Petitioner's direct
appeal. *See, e.g., Ashford v. Gilmore,* 167 F.3d 1130, 1131 (7th Cir. 1999) (citing 28 U.S.C. §
2254(e)(1)). Docket entries are designated as "D.E. ___," followed by the appropriate district
court docket number.

In September of 1997, David Brown ("Brown"), a member of the Mafia Insanes street gang, was running a drug spot for his gang at the corner of Drake and Chicago Avenues in Chicago. (*Id.*) Brown's boss was James McGhee ("McGhee"), a high-ranking member of the Mafia Insanes gang. (*Id.*) Petitioner, a member of the Conservative Vice Lords street gang, operated a drug spot at Central Park and Chicago Avenues, one block away from Brown's spot. (*Id.*) On or about September 12, 1997, Brown was riding his bicycle when Petitioner and other members of the Conservative Vice Lords threw rocks at him. (*Id.*) Brown and a few other Mafia Insane gang members challenged the Conservative Vice Lords to a fight, during which Brown received a black eye. (*Id.*)

On September 18, 1997, Brown and McGhee were driving in McGhee's Chevrolet Lumina past Petitioner's drug spot. (*Id.* at 4.) Brown and McGee were carrying loaded firearms. (*Id.* at 4-5.) At this time, Petitioner and a friend named "Bowlegs"[2] were walking with Ms. Ashley Brown ("Ashley"), then age 13, and Ms. Sarah Young ("Sarah") on the street near the intersection of Chicago and Central Park Avenues. (*Id.* at 2.) Sarah was wheeling her infant son, Maurice Hodges ("Maurice"), in a stroller. Petitioner lagged behind the group as they walked. (*Id.*)

As the group approached Chicago and Lawndale, Petitioner ran toward the group, telling them to "move, move, move, back, back, back." (*Id.*) Sarah, thinking Petitioner was joking, did not step aside. (*Id.*) Petitioner moved to the side of a church, pulled out a gun from underneath his shirt, and shot in the direction of McGhee and Brown in the Lumina. (*Id.*) McGhee fired from the driver's side of the car in Petitioner's direction. (*Id.* at 2, 4.) Brown attempted to fire shots at Petitioner, but he was unable to unlock the passenger-side door. (*Id.* at 5-6).

---

[2]     "Bowlegs" actual identity was not verified at trial, but he is believed to be Keith Tiggs.

Petitioner was not wounded, but Sarah was hit in the left leg below the knee. (*Id.* at 2.)

Maurice, the infant, was tragically shot by a bullet that passed completely through his chest, and

he died as a result of the gunshot. (*Id.*) The police subsequently obtained McGhee's gun from

Brown while investigating an unrelated matter. (*Id.* at 5.) Forensic evidence revealed that the

bullets that struck Sarah and Maurice came from McGhee's gun. (*Id.*)

The first-degree felony murder count on which Petitioner was convicted and sentenced

was premised on underlying ADF charges. (*Id.* at 8.) With respect to the ADF charges, the

indictment identified the offender (*i.e.*, Petitioner), the name and statutory basis of the offense,

and the date, time and place of the offense; the intended targets of Petitioner's shots were

identified as Ashley Brown and Keith Tiggs. (*Id.*) McGhee was also indicted for first-degree

felony murder, aggravated battery with a firearm, aggravated discharge of a firearm, and mob

action. *See People v. McGee*, 801 N.E.2d 948, 949 (Ill. App. Ct. 2003).[3]

Petitioner was tried in a joint bench trial with McGhee. (D.E. 19, Ex. H at 1.) At trial,

Petitioner did not dispute that he discharged a firearm; indeed, Petitioner affirmatively asserted

that he acted in self-defense and in defense of others. (*Id.* at 12.) The main issue at trial was

whether Petitioner was the initial aggressor. (*Id.* ("The determinative question at trial was not

whether defendant [*i.e.*, Petitioner] fired in the direction of another person, but whether

defendant or McGhee was the initial aggressor.").) To rebut Petitioner's self-defense claim, the

State offered Sarah's testimony that Petitioner fired first, and that McGhee returned fire. (*Id.* at

---

[3]     The opinion of the Illinois Court of Appeals—*People v. McGee*, 801 N.E.2d 948 (Ill.
App. Ct. 2003) (affirming defendant's convictions and fifty-year sentence for first-degree felony
murder, aggravated battery with a firearm, two counts of aggravated discharge of a firearm, and
mob action)—spells the defendant's name as "McGee." The opinion of the Illinois Court of
Appeals in Petitioner's case (D.E. 19, Ex. H), spells the co-defendant's name as "McGhee." This
Court will, for clarity, use the spelling that the Illinois Court of Appeals employed in Petitioner's
underlying appeal.

3.) In addition, the State offered Brown's testimony that Petitioner fired the first shots and McGhee began firing in response. (*Id.* at 29-30.) Petitioner did not testify and no evidence was presented by the defense. (*Id.* at 6.)

The circuit court found Petitioner guilty of first-degree felony murder of Maurice Young premised on aggravated discharge of a firearm; first-degree felony murder of Maurice Young premised on mob action; aggravated battery with a firearm of Sarah Young; and mob action. (*Id.* at 6-7.)

At the hearing on post-trial motions, defense counsel informed the court that he had filed a motion for a new trial and that Petitioner had filed a *pro se* motion for a new trial. (*Id.* at 24-25.) Petitioner's *pro se* motion advanced a variety of claims. In his brief, but not in his motion, Petitioner argued that his defense counsel was ineffective for failing to sufficiently challenge Sarah Young's testimony. (*Id.* at 24.) The trial court denied all of the post-trial motions. (*Id.* at 24, 26.)

On direct appeal, Petitioner argued that: (1) the State failed to prove he committed the offenses of conviction beyond a reasonable doubt, including felony murder predicated on aggravated discharge of a firearm; (2) the State failed to rebut his defenses of self-defense and defense of others; (3) the circuit court erred in denying his *pro se* motion for a new trial without appointing different counsel; (4) the circuit court erred in imposing disparate sentences. (*Id.*, Ex. H at 1-2.)

Petitioner's first claim argued that he was not proven guilty beyond a reasonable doubt for aggravated discharge of a firearm because "the State failed to elicit any evidence that [Petitioner] discharged a weapon in the direction of [Ashley] or Tiggs and failed to establish that [Petitioner] was accountable for the actions of James McGee and David Brown who were

members of a rival gang." (D.E. 19, Ex. E at 7.) The challenge was essentially rooted in state law, but Petitioner also cited some cases dealing with federal law; for example, he cited *Jackson v. Virginia*, 443 U.S. 307 (1979), for the proposition that the federal constitutional guarantee of due process demands that all of the elements of a crime be proven beyond a reasonable doubt. (*Id.* at 33.) In its brief, the State conceded that the conviction of ADF as to Tiggs should be vacated because the State did not prove at trial that Tiggs and "Bowlegs" were the same person. (D.E. 19, Ex. F at 30.) The State also argued that Petitioner was guilty of ADF in the direction of Ashley (and thus guilty of felony murder) on the basis of accountability principles for the shots that McGhee fired at her. (*Id.*)

The Illinois Court of Appeals affirmed Petitioner's felony murder conviction premised on ADF because it determined that the State had proven the elements of ADF and felony murder beyond a reasonable doubt by establishing that Petitioner discharged without authorization a firearm in the direction of another person, namely McGhee, proximately causing the unlawful killing of the infant, Maurice. (*Id.*, Ex. H at 12, 14.) The Illinois Court of Appeals acknowledged that the indictment charged that Petitioner had fired in the direction of Ashley and Tiggs, and not McGhee, and stated that the salient issue was "whether the variance between the indictment and the proof at trial was a 'fatal' variance resulting in undue prejudice to the defendant." (*Id.* at 10.[4]) The Illinois Court of Appeals concluded that the variance at issue was not fatal because Petitioner "was not unfairly surprised at trial, his defense was not required to be

---

[4]     On at least one prior occasion, the Illinois Court of Appeals has interpreted a challenge similar to the one advanced by Petitioner as a variance claim. *See People v. Montgomery*, 422 N.E.2d 226, 228 (Ill. App. Ct. 1981) ("[A]lthough defendant couches his argument in terms of reasonable doubt and 'total insufficiency' of the evidence, it is our opinion that his argument addresses whether there was a fatal variance between the complaint and the evidence which resulted in his conviction").

5

altered or compromised, and double jeopardy prohibits his retrial for the underlying offense of ADF as to McGhee or Brown." (*Id.* at 11.) In the course of its analysis, the court did not reference any federal constitutional law cases. (*Id.* at 10-15.)

Petitioner's second claim concerned the issue of whether felony murder could be predicated on a mob violence conviction. Petitioner argued on appeal that he was not guilty of mob violence because he was not "acting together" with McGhee, a member of a rival street gang. (*Id.* at 15-17.) The appellate court agreed, noting that contemporaneous action that is separate and independent is legally distinct from combined or concerted action. (*Id.* at 18.) Thus, Petitioner's convictions for mob action and felony murder predicated upon mob action were reversed. (*Id.*)

Petitioner's third claim challenged his convictions for aggravated battery with a firearm. Petitioner argued that he was not guilty of aggravated battery with a firearm as a principal because the evidence at trial established that Young was shot by McGhee's weapon. (*Id.* at 19.) Petitioner further argued that he was not guilty as an accomplice because there was no overt act in furtherance of a common design. (*Id.*) The appellate court agreed and reversed the conviction, noting that the proper rule of law was not the "proximate cause" principle from felony-murder cases, but rather the generic "accountability" principles in Illinois law as set forth in 720 ILCS 5/5-2(c). According to the Illinois Court of Appeals, Section 5-2(c) requires a common design and an overt act in furtherance of the common design and the State did not prove the existence of those elements beyond a reasonable doubt. (*Id.* at 20-21 (citing *People v. Cooper*, 743 N.E.2d 32, 42 (Ill. 2000)).)

Petitioner's fourth claim concerned self-defense. Petitioner claimed in his *pro se* motion for a new trial that the State failed to rebut his affirmative defense beyond a reasonable doubt.

(D.E. 19, Ex. H at 22.) The appellate court rejected this claim because the State proved beyond a reasonable doubt that Petitioner was the aggressor, which negated one of the elements of the defense. (*Id.* at 23.) The appellate court noted that while Petitioner made an effort to get other members of the group out of the line of fire, he fired the first shot, and Illinois law does not permit preemptive self-defense or defense of others. (*Id.* at 23 (citing *People v. Rodriguez*, 631 N.E. 2d 427, 430 (Ill. App. Ct. 1994)); *see also* D.E. 19, Ex. H at 23 ("After viewing the evidence in the light most favorable to the prosecution, the circuit court could have found defendant's affirmative defense negated beyond a reasonable doubt.").)

Petitioner also argued that the circuit court erred in denying his *pro se* motion for a new trial, in which he alleged defense counsel's supposed ineffectiveness. (*Id.* at 25.) In the brief accompanying his motion, but not in the motion itself, Petitioner argued that trial counsel was ineffective for failing to perfect the impeachment of Young, who denied on cross-examination that she told police on the day of the shooting that McGhee initiated the gunfire. (*Id.*) The appellate court determined that since the argument was not in the motion, Petitioner did not properly advance this claim, and thus, as a procedural matter, the circuit court did not fail to adequately address the issue. (*Id.* at 26.) With respect to the question of the putative additional Young impeachment, the Court of Appeals alternatively analyzed the ineffectiveness claim under *Strickland v. Washington*, 466 U.S. 668 (1984), and Illinois caselaw applying it. (D.E. 19, Ex. H at 26-29.) The appellate court, applying *Strickland*, determined that counsel's decision was a matter of trial strategy by defense counsel and, moreover, was not objectively unreasonable. (*Id.* at 29.) Furthermore, the court determined that Petitioner suffered no prejudice because Brown also testified that Petitioner fired first, and Petitioner presented no evidence to call into question Brown's unrebutted testimony that Petitioner fired first. (*Id.*) Petitioner also argued that trial

counsel refused or failed to disclose exculpatory evidence in Brown's confession. (*Id.*) The court of appeals determined that this claim was meritless because the record demonstrated that defense counsel thoroughly cross-examined Brown with regard to the contents of his statement. (*Id.*) Consequently, the Illinois Court of Appeals affirmed the circuit court's denial of Petitioner's *pro se* motion for a new trial without a hearing. (*See id.* ("[T]he allegations in defendant's post-trial motion were incognizable," "legally immaterial," or merely conclusory).)

Petitioner's final claim was that the circuit court abused its discretion in sentencing him to a 35-year prison term while Brown only received a 28-year sentence in spite of having greater culpability and a more serious criminal record. (*Id.* at 30.) The court of appeals determined that this argument was waived because it was not raised in the trial court (*id.* at 30) and that Petitioner did not fall under any of the waiver exceptions. (*Id.* at 31.) The appellate court also noted that it could not find an abuse of discretion because the record did not include the factors upon which the trial court relied in sentencing Brown, namely his criminal background, the charge to which he pled guilty, and his pre-sentence investigation report. (*Id.* at 32.)

On December 1, 2003, Petitioner filed a petition for rehearing with the Illinois appellate court, arguing that the appellate court had *sua sponte* raised the variance issue and had failed to consider the applicable state and federal constitutional standards governing indictments. (*See id.*, Ex. I at 12.) The petition for rehearing cited *Peters v. Kiff*, 407 U.S. 493 (1972), for the proposition that "the validity of an indictment is subject to measurement against general fourteenth amendment guarantees of due process." (D.E. 19, Ex. I at 12.) The petition also cited *United States v. Harris*, 457 F.2d 191, 197 (7th Cir. 1972), as the governing case for determining the constitutional requisites of an indictment. (D.E. 19, Ex. I at 12-13.) The appellate court denied the petition for reconsideration four days later. (*Id.*, Ex. J.) Petitioner then filed a petition

for leave to appeal to the Illinois Supreme Court, which was denied on March 24, 2004. (*Id.*, Ex. L.)

On March 14, 2005, Petitioner filed a petition for a writ of habeas corpus in the District Court for the Northern District of Illinois. On August 19, 2005, Petitioner filed an amended petition for a writ of habeas corpus that is now before the Court. (D.E. 26.)

I.    Standard of Review

Petitioner is imprisoned pursuant to a judgment of the Illinois courts. The grounds upon which a federal district court may issue a writ of habeas corpus for a person imprisoned pursuant to a state court criminal judgment are subject to meaningful limits. First, the Court is permitted to provide habeas relief "only on the ground that [a prisoner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Court cannot grant habeas relief on the grounds that a state court incorrectly applied state law, except to the extent that such application also violated federal law.

Second, the Court may not provide habeas relief unless Petitioner has exhausted his available remedies in state courts. 28 U.S.C. § 2254(b)(1)(A). Exhausting all state remedies includes presenting each claim on appeal to the Illinois appellate court and in a petition to the Illinois Supreme Court for discretionary review. *See, e.g., O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Hadley v. Holmes*, 341 F.3d 661, 664 (7th Cir. 2003) (holding that the rule applies for purposes of habeas corpus under Section 2254). This rule applies to claims presented in petitions for state post-conviction relief, as well as to claims contained in direct appeals from criminal courts. *See, e.g., White v. Godinez*, 192 F.3d 607, 608 (7th Cir. 1999) (*per curiam*).

Third, habeas relief is not ordinarily available for claims that have been "procedurally defaulted" in state proceedings. This means that the Court may not review a claim if "the court

9

to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991). The Court may excuse procedural default when there is cause for the default and prejudice as a result of the alleged violation of federal law or where a refusal to consider the claim would result in a fundamental miscarriage of justice. *See Dellinger v. Bowen*, 301 F.3d 758, 766 (7th Cir. 2002). To show cause for a default, Petitioner must offer an excuse that cannot fairly be attributed to him. For example, conduct by a petitioner's counsel that is constitutionally ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984), constitutes cause. However, a claim that, for example, ineffective assistance was sufficient cause for a procedural default can *itself* be procedurally defaulted if it is not properly presented to state courts. *See Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000); *Dellinger*, 301 F.3d at 766-67.

In order to establish that a fundamental miscarriage of justice has occurred, Petitioner must demonstrate by clear and convincing evidence that, but for the alleged violation of federal law in the state court proceedings, no reasonable juror would have convicted him. *Dellinger*, 301 F.3d at 767 (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). In other words, the exception is "limited to situations where the constitutional violation has probably resulted in a conviction of one who is actually innocent." *Id.* Due to the prior finding of guilt by the factfinder, a petitioner alleging a fundamental miscarriage of justice bears the burden of proof. *See Buie v. McAdory*, 341 F.3d 623, 626-27 (7th Cir. 2003).

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), 110 Stat. 1214 (1996), placed additional restrictions on federal habeas relief for a person imprisoned pursuant to the judgment of a state court. Prior to AEDPA's enactment, "federal courts disregarded the state court's legal conclusions and reached independent judgments on the issues presented to them, but

10

deferred to the state court's findings of fact." *Agnew v. Leibach*, 250 F.3d 1123, 1128-29 (7th Cir. 2001). Under AEDPA, if the state court reaches a decision on the merits, federal courts may not disregard a state court judgment unless it violates federal law and is either "contrary to, or involves an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C.§ 2254(d). A judgment is "contrary to" Supreme Court precedent if the state court made a statement of law inconsistent with one made by the Supreme Court, or if the state court decided a case with "materially indistinguishable facts" differently from the Court. *Huynh v. Bowen*, 374 F.3d 546, 548 (7th Cir. 2004) (citing *Williams v. Taylor*, 529 U.S. 362, 413 (2000)).

A state court decision is an "unreasonable application of" clearly established law "if the state court identifies the correct governing legal principle from the [Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Cossell v. Miller*, 229 F.3d 649, 654 (7th Cir. 2000) (citing *Williams*, 529 U.S. at 413). As the Seventh Circuit has repeatedly instructed, the unreasonable application prong of Section 2254(d)(1) is "a difficult standard to meet." *Floyd v. Hanks*, 364 F.3d 847, 850 (7th Cir.2003) (citation omitted); *Jackson v. Frank*, 348 F.3d 658, 662 (7th Cir.2003) (citation omitted); *see also Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir.2002) (holding that "unreasonable," for the purpose of Section 2254(d)(1), means "something like lying well outside the boundaries of permissible differences of opinion"). In this regard, the Supreme Court has repeatedly instructed that an unreasonable application of federal law is something more than simply an application that the habeas court might not itself have reached in the first instance or that the habeas court thinks is incorrect. *See, e.g., Woodford v. Viscotti*, 537 U.S. 19, 24-25 (2002).

11

The language of Section 2254(d) expressly limits its application to claims that were "adjudicated on the merits in State court proceedings." 28 U.S.C. § 2254 (d)(1). If a state court rejects a claim on procedural grounds, the claim has not been adjudicated on the merits. *See, e.g., Braun v. Powell*, 227 F.3d 908, 916-17 (7th Cir. 2000). In cases where a state court adjudicates a federal claim, but resolves it on the basis of state rather than federal law, the federal claim is deemed adjudicated on the merits "so long as the standard it [*i.e.*, the state court] applied was as demanding as the federal standard." *Oswald v. Bertrand*, 374 F.3d 475, 477 (7th Cir. 2004) (collecting cases). This construction of "adjudicated on the merits" is consistent with the Supreme Court's teachings about the meaning of "contrary to . . . clearly established Federal law." In *Early v. Packer*, 537 U.S. 3, 7-8 (2002) (*per curiam*), the Supreme Court stressed that a state court's decision is not incorrect simply because the state court did not cite Supreme Court decisions. In fact, the Supreme Court explained, a state court need not even be aware of the applicable Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Id.*, 537 U.S. at 8. Claims deemed to not have been adjudicated on the merits in state court are reviewed by federal courts using the general standards set forth in 28 U.S.C. § 2243. Under this standard, the Court must "dispose of the matter as law and justice require." *Braun*, 227 F.3d at 917.[5]

II.    Issues Raised in the Petition

Petitioner seeks habeas relief on the principal grounds that (1) the Illinois Court of

---

[5]    *See id.* ("In this case, the Supreme Court of Wisconsin disposed of Ms. Braun's claims without having reached the merits. Therefore, we cannot characterize these claims as having been adjudicated on the merits by the state court. Accordingly, we shall not employ the standard of review set forth in AEDPA but, rather, must rely upon the general standard as set forth in 28 U.S.C. § 2243. *See Moore v. Parke*, 148 F.3d 705, 708 (7th Cir. 1998). This standard requires us to 'dispose of the matter as law and justice require.'").

Appeals deprived him of due process of law when it "improperly amended" a grand jury

indictment in affirming his conviction and (2) the state failed to prove its case beyond a

reasonable doubt, which denied him due process of law. The two claims tend to overlap, at least

at times, in that the felony murder conviction is based on an ADF violation, but the Court will

attempt to set them forth as clearly as possible below.[6]

A.      Due Process Violation from Inadequate Indictment

Petitioner argues that "the Appellate Court of Illinois improperly amended the indictment

to charge and convict him with two additional counts of aggravated discharge of a firearm."

(D.E. 26 at 6 (internal capitalization omitted for clarity).) According to Petitioner, this violated

---

[6]      Literally on the eve of the release of this opinion, and many months after the filing of the relevant documents, Petitioner filed what he denominated as a "Notice by Petitioner of Voluntary Dismissal of Ground One." (D.E. 31.) In that pleading, Petitioner states that he "hereby serves notice of his voluntary dismissal of the claims raised in Ground One of his petition for habeas corpus relief." (Id. at 1.) Ground One of Petitioner's operative habeas petition—the argument for which comprises the bulk of his substantive brief—is entitled "Petitioner Should Be Granted A Writ Of Habeas Corpus Where The Appellate Court Of Illinois Improperly Amended The Indictment To Charge and Convict Him With Two Additional Counts Of Aggravated Discharge Of A Firearm—Thereby Violating His Substantial Right To Be Tried Only On The Charges Presented In An Indictment Returned By The Grand Jury Under The Fifth Amendment To The Constitution Of The United States." (D.E. 26 at 6.) Petitioner's dismissal appears to be predicated on the fact that the Illinois Court of Appeals vacated his actual conviction for aggravated discharge of a firearm (but not the felony murder charge grounded on the ADF violation) because "a defendant cannot be convicted of both felony murder and the predicate felony upon which it is based." (D.E. 19, Ex. H at 15 n.6 (Illinois citation omitted).) Notwithstanding Petitioner's "voluntary dismissal," the Court will, in an abundance of caution, address the merits of all arguments presented by Petitioner—particularly given his *pro se* status and the intertwined nature of the ADF violation and the felony murder count based on it. (Petitioner does not suggest that he is entirely abandoning his habeas challenge, and Ground Two in the Petition, a sufficiency of evidence challenge to the felony murder conviction (*see* D.E. 26 at 14-19), at least arguably could be read charitably to implicate some of the same issues as were advanced in Ground One.) Because the Court finds all of Petitioner's challenges without merit, the decision to address his claims does not alter the bottom-line result. However, to the extent this Court has erred in even addressing the merits of such arguments, given Petitioner's recent concessions, that error would further support the result reached herein—on the grounds that Petitioner's concessions and voluntary dismissal precludes him from obtaining relief under any circumstances.

his "substantial right to be tried only on the charges presented in an indictment returned by the grand jury under the Fifth Amendment to the Constitution of the United States." (*Id.* (internal capitals omitted).) For the reasons explained below, the Court respectfully rejects this claim.

        1.     Petitioner's Claim Was Adjudicated on the Merits in State Court

As a threshold matter, the Court addresses the applicable standard of review—although it is not outcome-determinative in this case. The arguments presented in Petitioner's challenge were adjudicated on the merits in state court, with the Illinois Court of Appeals writing at length about whether Petitioner was properly convicted of first degree felony murder predicated on aggravated discharge of a firearm, and whether the indictment sufficiently apprised Petitioner of the charge against him and protected Petitioner against double jeopardy concerns. (*See* D.E. 19, Ex. H at 10-15.) For example, the Illinois Court of Appeals stated

> The relevant inquiry becomes whether the indictment apprised defendant of the precise offense charged with sufficient specificity to prepare his defense and to plead the resulting conviction as a bar to future prosecution. To require reversal, a variance between the indictment and the proof at trial must be material and of such character as to mislead the accused in making his defense or expose him to double jeopardy. A variance as to names alleged in an indictment, and those proved in evidence, is not regarded as material unless some substantial injury is done to the accused.

*Id.* at 11 (internal quotation marks and numerous internal citations omitted). The Illinois Court of Appeals then proceeded through an extended analysis of substantive Illinois criminal law, the record from the trial, precedent concerning the propriety of indictments and variances therefrom, and double jeopardy protections. (*Id.* at 11-15.) Under this scenario, it seems clear that the Illinois Court of Appeals addressed the issues "on the merits" and did not bypass them for some reason.

Under such circumstances, the deferential standards set forth by Congress in 28 U.S.C. § 2254(d) would appear to be triggered and to apply. *See, e.g., Canaan v. McBride*, 395 F.3d 376,

382 (7th Cir. 2005) (teaching that the AEDPA standard applies to a "'claim that was adjudicated on the merits in State court proceedings'") (quoting *Braun v. Powell* 227 F.3d 908, 916 (7th Cir. 2000) (in turn quoting 28 U.S.C. § 2254(d))). Supreme Court precedent acknowledges that one of AEDPA's purposes was "to enhance the States' capacities to control their own adjudications," *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997), and such precedent also repeatedly emphasizes that state courts, when they actually address issues, are presumed "[to] know and follow the law." *Woodford v. Viscotti*, 537 U.S. 19, 24 (2003) (*per curiam*). *Accord, e.g., id.* (discussing the "'highly deferential'" standard prescribed by Congress "'for evaluating state court rulings,'" "'which demands that state-court decisions be given the benefit of the doubt'") (quoting *Lindh*, 521 U.S. at 333 n.7); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("A federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system"); *Williams v. Taylor*, 529 U.S. 362, 386 (2000) (plurality opinion of Stevens, J.) ("AEDPA plainly sought to ensure a level 'deference to the determinations of state courts,' provided those determinations did not conflict with federal law or apply federal law in an unreasonable way. Congress wished to . . . prevent 'retrials' on federal habeas, and to give effect to state convictions to the extent possible under the law.") (quoting H.R. Conf. Rep. No. 104-518, p. 111 (1996)). In this case, the Illinois Court of Appeals analyzed the merits of the issues implicated by Petitioner's arguments at length, and that analysis would appear to deserve the deference prescribed by AEDPA.

This conclusion is at least inferentially supported by precedent determining that a claim can be adjudicated "on the merits" even when the state court does not directly cite or discuss the federal law that is the subject of habeas challenge. *See, e.g., Oswald v. Bertrand*, 374 F.3d 475, 477 (7th Cir. 2004). *Oswald* (and the extensive Supreme Court teaching upon which it is based)

instructs that it is irrelevant whether a state court that addressed an issue did so "with reference to federal law." *Id.* "So long as the [state law] standard" applied by the state court "was as demanding as the federal standard . . . the federal claim is deemed adjudicated on the merits and its rejection therefore is entitled in this habeas corpus proceeding to the deference prescribed by section 2254(d)(1)." *Id.* (collecting Supreme Court and federal appellate precedents).

In the instant case, the Illinois Court of Appeals analyzed the merits of the variance issue presented under a standard that is at least as demanding as the federal one. To be sure, the citations were state court ones—consistent with Petitioner's position in the state appellate courts (in his subsequent filings seeking to challenge the merits and propriety of the Illinois Court of Appeals' decision) that the issue at hand was largely one of state law. *See* D.E. 19, Ex. I (Petitioner's petition for rehearing to the Illinois Court of Appeals) at 12 (acknowledging that "[b]ecause the constitutional requirement of a grand jury indictment is not applicable to the states, the issue of the sufficiency of the indictment is largely one of state law.").

As was the case in *Oswald*, Petitioner does not contend in his Petition in this Court that the state standards were less demanding that the federal ones germane in this federal habeas proceeding. *See Oswald*, 374 F.3d at 477. Moreover, Petitioner's concession that the variance issue is largely one of state law, and his related argument that state law also reflects federal guarantees (*see* D.E. 19, Ex. I at 12-13), also is consistent with the conclusion that the Illinois Court of Appeals did not apply any standard less demanding than the federal one. Furthermore, and as explained further below, it appears clear that the analysis of the Illinois Court of Appeals, which reviewed (1) whether the indictment apprised Petitioner of the precise offense charged; (2) whether the indictment provided sufficient specificity to permit Petitioner to prepare his defense; and (3) whether Petitioner could plead the resulting conviction as a bar to future

prosecution—*see* D.E. 19, Ex. H at 11-15—was at least as demanding than the applicable federal standard set forth in precedent such as *Bae v. Peters*, 950 F.2d 469 (7th Cir. 1991). *See id.* at 478 (teaching that "a criminal defendant must receive adequate notice of the charges against him so that he may defend himself against those charges," and further stating that general due process standards are less rigorous than Grand Jury Clause standards applicable in federal prosecutions, because the Grand Jury Clause does not apply to the States).

To be sure, the Illinois Court of Appeals addressed the substance of the variance issue before this Court *sua sponte*, in response to arguments framing the issue under sufficiency of the evidence and state accountability principles. (*See, e.g.*, D.E. 19, Ex. H at 8, 10.) Nonetheless, Petitioner does not argue now, and did not argue in his petition for rehearing to the Illinois Court of Appeals nor in his petition for leave to appeal to the Illinois Supreme Court, that the Illinois Court of Appeals failed to analyze the variance issue before this Court; instead, Petitioner argued that the Illinois Court of Appeals decided the issue and got it wrong. Under such circumstances, the deference principles embodied in AEDPA are implicated and apply. *See Oswald*, 374 F.3d at 477.[7]

        2.       Petitioner's Claim Concerning Variance Is Substantively Meritless

Petitioner initially seeks habeas relief on the grounds that the Illinois Court of Appeals deprived him of due process of law when it "improperly amended" a grand jury indictment in affirming his felony murder conviction predicated on aggravated discharge of a firearm. (D.E. 26

---

[7]     As mentioned, although the AEDPA question merited discussion, given the repeated admonitions in precedent to respect ADEPA's deferential standards where they apply, the determination of the proper standard of review for this claim is not outcome-determinative. Put differently, Petitioner's claim would not provide a basis for habeas relief if the Court "dispensed with the matter as law and justice require," the standard otherwise specified by 28 U.S.C. § 2243, as explained further below.

17

at 6.) According to Petitioner, this violated his "substantial right to be tried only on the charges presented in an indictment returned by the grand jury under the Fifth Amendment to the Constitution of the United States." (*Id.* (certain internal capitalization omitted).) This claim is respectfully rejected for several reasons.

First, as a threshold matter of clarification, the Illinois Court of Appeals did not amend the indictment. An *amendment* occurs when the charging terms of the indictment are changed, either literally or in effect, after the grand jury issued the indictment. *See, e.g., Gaither v. United States*, 413 F.2d 1061, 1071 (D.C. Cir. 1969) (Wright, J.) (collecting authorities). A *variance* (or at least an actionable one) occurs when the charging terms of the indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment. *Id.* (citation omitted); *accord, e.g., United States v. Muelbl*, 739 F.2d 1175, 1180 (7th Cir. 1984) (collecting cases, including *Gaither*, 413 F.2d at 1071). To be entirely fair, cases sometimes use the term "constructive amendment" and "variance" interchangeably—*see United States v. Cusimano*, 148 F.3d 824, 829 (7th Cir. 1998). Many cases addressing constructive amendment/variance questions are of somewhat limited significance, in that the analysis is often driven by Grand Jury Clause principles which do not apply as against States and therefore are not implicated in the instant context. *See, e.g., Bae*, 950 F.2d at 478; *accord, e.g., Hurtado v. California*, 110 U.S. 516, 538 (1884). Nonetheless, those cases (applying a more demanding standard) nonetheless admit that whether a materially problematic amendment or variance has occurred turns on the nature of the case's facts—with precedents "hav[ing] found a constructive amendment where there is a complex of facts [implicated at trial] distinctly different from those set forth in the charging instrument and not where there is a single set of facts." *Muelbl,* 739 F.2d at 1180 (collecting authorities; internal quotation marks omitted).

In the case *sub judice*, the Illinois Court of Appeals determined that any variance between the charging instrument and the proof at trial was not sufficiently material or prejudicial as to undermine the conviction for felony murder predicted on ADF. (D.E. 19, Ex. H at 11-12.) (Such a variance in the criminal law is also often referred to as a "fatal" variance.) Petitioner's challenge to this holding, reading his claim generously, can be understood to raise two federal due process claims.[8]

First, Petitioner may be arguing that *Jackson v. Virginia*, 443 U.S. 307 (1979), requires the State to prove every element of a crime beyond a reasonable doubt and that the State failed to do so here concerning the ADF charge. (*See* D.E. 26 at 9.) This argument, as least in this formulation, was not presented in Petitioner's petition for leave to appeal to the Illinois Supreme Court. (*Id.*, Ex. K.) Thus, this claim was procedurally defaulted.

In addition, this claim is substantively meritless because the state proved all of the elements of the offense at trial. Under Illinois law, the elements of the ADF charge (which underlies the felony murder conviction for Petitioner) are: (1) knowingly or intentionally; (2) discharging a firearm; (3) in the direction of another person. 720 ILCS 5/24-1.2(a)(2). At trial, the State proved (and Petitioner admitted as much when he argued self-defense) that Petitioner knowingly discharged a firearm in the direction of McGhee. (D.E. 19, Ex. H at 10.) While the indictment did not name McGhee, the specific identity of the victim is not an element of the offense under Illinois law: so long as the firearm is discharged in the direction of any person, other than the shooter, the violation occurs. *See, e.g., People v. Collins*, 824 N.E. 2d 262, 269 (Ill. 2005) (affirming conviction where trial court struck names of certain police officers who

---

[8]      As explained, the Grand Jury Clause does not apply as against the States, and any alleged errors of state law are not cognizable in federal habeas review. *See, e.g., Holman v. Gilmore*, 126 F.3d 876, 884 (7th Cir. 1997) (collecting cases).

were in area of shooting as surplusage, because "[t]he specific identity of the victim is not an essential element of the offense of reckless discharge of a firearm"); *see also id.* ("[W]e find that the naming of Officers Svec and Dowling was surplusage and did not affect the validity of the complaints. Therefore any valiance was neither material nor prejudicial."); *accord People v. DeKosta*, 270 N.E.2d 475, 477-78 (Ill. App. Ct. 1971) (upholding conviction for reckless endangerment where charging document simply stated that the defendant endangered the bodily safety of passing motorists by recklessly throwing rocks at passing motor vehicles, because "the identity of the person endangered is not an element of the offense").[9] Even in federal prosecutions, where the Grand Jury Clause applies, the government is not required to prove collateral facts that are set forth in the indictment that are not elements of the crime, and those facts may be stricken or ignored as surplusage or a "'useless averment.'" *United States v. Bond*, 231 F.3d 1075, 1078 (7th Cir. 2000); *see also id.* (because participation in a "scheme" to defraud was not an essential element of the offense at issue, "the reference to the scheme was a useless averment" that "may be ignored"; moreover "including the phrase in the indictment does not make it an element") (collecting numerous cases; internal quotation marks and citations omitted). Thus, the indictment identified all the necessary elements of ADF, and all of those elements were proven beyond a reasonable doubt at trial. The Illinois Court of Appeals conclusion in this regard therefore was correct and, *a fortiori*, was not unreasonable within the meaning of AEDPA

---

[9]     Substantial federal appellate authority teaches that "[t]o determine whether a state habeas petitioner has been convicted of a crime not set forth in the charging instrument, courts look to the law of the state where the petitioner was convicted." *Hain v. Gibson*, 287 F.3d 1224, 1231 (10th Cir. 2002) (collecting numerous circuit precedents, including *Jenkins v. Nelson*, 157 F.3d 485, 498-99 (7th Cir. 1998)).

jurisprudence.[10]

Second, Petitioner may be claiming that the indictment was so vague as to deprive him of due process rights guaranteed by the Fourteenth Amendment.[11] The State views the claim in a somewhat different light, describing Petitioner's claim as such: "his due process rights were violated when the appellate court affirmed his convictions for aggravated discharge of a firearm, despite a variance between the indictment and the evidence presented at trial." (D.E. 20 at 9.) A substantially similar version of this argument was raised in Petitioner's petition for a rehearing. (D.E. 19, Ex. I at 12-13.) Furthermore, in his petition for leave to appeal to the Illinois Supreme Court, Petitioner's claimed a violation of "a fundamental right, under both the Federal and State Constitutions, to be informed of the 'nature and cause' of criminal accusations made against him." (*Id.*, Ex. K at 15.) While the claim is not as artfully presented as in the petition for a rehearing, Petitioner sufficiently "alerted the court to the alleged federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 33 (2004). Thus, this claim has not been procedurally defaulted in this framing.

While the Grand Jury Clause does not apply to criminal prosecutions by state governments, precedent teaches that a charging document must satisfy the Fourteenth Amendment's requirement of due process of law. *See Bae*, 950 F.2d at 478. These general due process protections are less demanding than the standards concerning the federal right to

---

[10]     Petitioner cites *United States v. Leichtnam*, 948 F.2d 370 (7th Cir. 1991), but the discussion Petitioner cites is based on the Grand Jury Clause (*id.* at 376), which is not applicable as against the State of Illinois. *See, e.g., Bae v. Peters*, 950 F.2d 469, 478 (7th Cir. 1991).

[11]     It is not clear that this issue has been raised, as Petitioner does not cite any of the line of cases that were cited in his petition for reconsideration. However, Petitioner does argue that his due process rights were violated, and he argues that the variance between the indictment and the proof at trial was fatal, and that he was prejudiced by the variance. (D.E. 26 at 12-13.)

21

indictment by grand jury; otherwise, the Fourteenth Amendment would incorporate the Grand Jury Clause against the States, contrary to Supreme Court precedent. *See id.* (collecting cases, including *Hurtado v. California*, 110 U.S. 516 (1884)). With respect to the adequacy of an indictment, the due process inquiry is two-fold: (1) did the defendant receive adequate notice of the charges and (2) did the defendant have the ability to defend himself against the crime charged. *See id.*; *see also Tague v. Richards*, 3 F.3d 1133 (7th Cir. 1993). If any proven prejudice is "severe enough," then "a due process violation could occur." *Bae*, 950 F.2d at 478.

Petitioner does not dispute that a charge of ADF need not identify a specific victim. Nor does he dispute that the indictment identified the name of the accused, the date and place of the offense, and the statutory provision alleged to have been violated. As explained further above, Petitioner also does not dispute that the evidence at trial established that he knowingly discharged a firearm in the direction of a person (McGhee); indeed, his defense to the overall matrix of charges–the only defense coherently available–was that he shot at McGee in self-defense, and it was McGee's aggression that was the proximate cause of Maurice's death. Given these facts, Petitioner has not met his burden of showing that he received inadequate notice of the charges against him. *Accord* D.E. 19, Ex. H at 10-15 (holding that, with respect to any variance, it was not fatal because (1) Petitioner was not unduly surprised at trial; (2) Petitioner's defense at trial was not altered or compromised because he was required by the evidence to claim self-defense; and (3) Petitioner faced no legitimate fears concerning double jeopardy or any vagueness in that regard). The conclusion of the Illinois Court of Appeals is consistent with federal cases interpreting the Grand Jury Clause, which have found that a minor error in the indictment does not deprive a defendant of adequate notice. *See, e.g., Bond*, 231 F.3d at 1077-78 (not relevant that evidence did not establish that City of Milwaukee was victim of fraud

scheme, as stated in indictment, because participation in a fraud scheme was not even an element of the charge at issue, "and including the phrase in the indictment does not make it an element") (collecting various cases, including *United States v. Mastrandrea*, 942 F.2d 1291 (8th Cir. 1991) and *United States v. Quintanilla*, 2 F.3d 1469 (7th Cir. 1993)); *see also id.* at 1078 ("[A] part of the indictment which is unnecessary to the allegations of the offense may normally be treated as a useless averment that may be ignored") (internal quotation marks omitted); *United States v. Clark*, 943 F.2d 775, 783 (7th Cir. 1991); *accord Harris v. Illinois*, 457 F.2d 191, 197 (7th Cir. 1972) (rejecting variance claim where indictment charged robbery by use of force, and evidence showed only threat of force, because a slight variance between the charging document and the proof at trial "is deemed non-prejudicial and not a constitutional impairment to a finding of guilt"). In this regard, the Court notes that the Illinois Court of Appeals determined that the name of the intended target is surplusage in an ADF charge and therefore did not require reversal concerning the affected felony murder count, a conclusion consistent with (and certainly not in material conflict with) the federal precedent cited above. (*See* D.E. 19, Ex. H at 11-12.)

With respect to prejudice, Petitioner advances nine reasons why he was prejudiced at trial by the variance. The first reason is a conclusory statement that the "record supports a finding that the variance misled and hindered his defense." (D.E. 26 at 13.) The Illinois Court of Appeals thoroughly and thoughtfully analyzed this question, and the panel unanimously concluded there was no such prejudice. (D.E. 19, Ex. H at 12-13.) The Illinois Court of Appeals stated:

> At trial, defendant asserted that he acted in self-defense and in defense of others. The determinative question at trial was not whether defendant fired in the direction of another person, but whether defendant or McGhee was the initial aggressor. The evidence showed, and defendant conceded, that he fired at McGhee, thereby satisfying each element of the underlying offense, ADF.

Defendant was sufficiently apprised by the evidence of the precise offense in order to prepare his defense. [* * * *] He would not have altered his defense had he been properly charged as to McGhee because he could not refute the State's evidence proving he fired his weapon at McGhee. Rather, defendant was compelled to assert self-defense which, if not accepted as proper justification for his conduct, corroborates his commission of the offense. Defendant was not unfairly surprised by State's proof at trial, nor was he prejudiced by that variance.

(*Id.*) In his first conclusory assertion, Defendant offers no meaningful challenge to this holding of the Illinois appellate court, which, as discussed further below, appears to be correct in any event.

Petitioner's second through sixth reasons state that Petitioner would have marshaled additional evidence in support of a self-defense argument if he had been charged with ADF as to McGhee. (D.E. 26 at 13.) With all respect, such a claim conveniently omits the fact that Petitioner's main argument at trial was self-defense, meaning that he had every incentive to develop this evidence, regardless of how the ADF charge was specifically set forth concerning non-essential facts. (*See* D.E. 19, Ex. H at 13 (Petitioner was "compelled to assert defense which, if not accepted as proper justification for his conduct, corroborates his commission of the offense.").) The proffered reasons are not persuasive and are not a compelling basis to reverse the conclusion of the Illinois Court of Appeals.

Petitioner's seventh proffered reason is that he would have requested a jury trial and jury instructions on the ADF charge at trial. (D.E. 26 at 13.) Petitioner offers no explanation concerning why the inclusion or substitution of McGhee's name in the ADF count would have altered the calculus on whether to request a jury trial. Moreover, reasoned adjudication of Petitioner's claim does not require abandonment of the commonsense realization that few defendants or their counsel would seriously even consider a jury trial in connection with a case in which, on Petitioner's view of things at trial, Petitioner would be contending that he unlawfully

possessed a firearm and returned fire in an inter-gang, narcotics-turf, street gun battle in which an eighteen-month-old infant was tragically killed. Criminal defense is full of judgment calls, and one can never say never, but few defendants or their counsel would seriously contemplate embracing a jury as a putative factfinder in a case such as this one. Petitioner's argument in this regard is conclusory and unpersuasive, and it is respectfully rejected.

Petitioner's eighth proffered reason is that the variance changed appellate counsel's strategies, which was to Petitioner's detriment. This would not appear to be a valid showing of prejudice because the variance must cause prejudice at trial. *See, e.g., Bae*, 950 F.2d at 478 ("due process clause requires that a criminal defendant receive 'notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge.'") (citation omitted). Moreover, and in any event, Petitioner appears to be claiming that the Illinois Court of Appeals unfairly prejudiced him because it framed an issue on its own that it determined was relevant. That sort of occurrence, however, happens routinely in adjudication at every level (even if it does not occur in every case or perhaps even the majority of cases), and such an occurrence is not normally considered a due process violation or anything approaching it. *See generally, e.g.*, John J. Cound, Jack H. Friedenthal, Arthur R. Miller, and John E. Sexton, <u>Civil Procedure: Cases and Materials</u> 375, 379 (8th ed. 2001) (explaining that in the landmark decision, *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), the Supreme Court *sua sponte* overruled *Swift v. Tyson*, 41 U.S. 1 (1842), notwithstanding that the subject was neither briefed nor urged by either party); *accord People v. Montgomery*, 422 N.E.2d 226, 228 (Ill. App. Ct. 1981) (Illinois Court of Appeals *sua sponte* analyzing purported sufficiency of evidence argument of criminal defendant as a fatal variance claim). With respect to the variance issues, Petitioner presented his arguments to the Illinois Court of Appeals in his rehearing petition concerning why its decision purportedly was

wrong, and to the Illinois Supreme Court in his petition for leave to appeal, and he has presented them here. Petitioner has not shown a due process violation by virtue of the Illinois Court of Appeals's *sua sponte* treatment of the issue as a variance one.

Petitioner's final claim as to why he was prejudiced was that trial counsel would have presented additional evidence challenging Petitioner's liability based upon accountability principles of Illinois law. (D.E. 26 at 13.) As an initial matter, Petitioner was not prejudiced because the Illinois Court of Appeals reversed his conviction for ABF on the grounds that he was not liable for McGhee's actions under 720 ILCS 5/5-2, the accountability provision of the Illinois Criminal Code. Moreover, if Petitioner is arguing that his felony murder conviction was based on accountability principles, he is mistakenly equating responsibility under the felony-murder rule with the Code's general accountability provisions. Petitioner was not guilty of first-degree murder on the basis of generic accountability principles, he was guilty of that offense because of the felony-murder rule and well-established principles related to it. (D.E. 19, Ex. H at 15.)

In this regard, the Illinois Criminal Code ("Code") provides that "a person who kills an individual without lawful justification commits first degree murder if, in performing the acts which cause the death . . . he is attempting or committing a forcible felony other than second degree murder." 720 ILCS 5/9-1(a). The Illinois Supreme Court has determined that the Code codified the "proximate cause theory" of felony murder, meaning that "liability attaches under the felony-murder rule for any death proximately resulting from the unlawful activity," irrespective, for example, of whether the defendant did the killing or it was directly precipitated by a putative victim or bystander attempting to resist the crime. *See, e.g.*, *People v. Lowery*, 687 N.E.2d 973, 975-76 (Ill. 1997). As a result, the State does not have to prove beyond a reasonable doubt that the Defendant personally killed the victim; it merely needs to prove that the death was

a "direct and foreseeable consequence" of committing the felony. *See, e.g., id.* at 976 (collecting cases); *accord id.* ("Thus, there is no reason why the principle the doctrine of proximate cause should not apply to criminal cases. Moreover, we believe that the intent behind the felony-murder doctrine would be thwarted if we did not apply the rule in this context."). Thus, Petitioner's challenge is misplaced: the general standards for accountability and the felony-murder rule are distinct. Under the felony-murder rule, there is no requirement of a common design or enterprise between the felon and the killer. *Id.* (collecting Illinois precedent); *Cooper,* 743 N.E. 2d at 38 (collecting cases and noting differences between felony murder principles and general accountability principles under Illinois law).[12]

B.    Due Process and Proof Beyond a Reasonable Doubt Concerning Felony Murder

Petitioner advances a number of claims that in one way or another allege that he was deprived of due process of law because the state failed to prove him guilty beyond a reasonable doubt of felony murder. As a threshold matter, all of these claims are likely procedurally defaulted because they were not presented to the Illinois Supreme Court in a petition for leave to appeal. *See, e.g., Dellinger,* 301 F.3d at 766-67. At the time that Petitioner filed his motion to amend his habeas petition so as to include such claims (D.E. 25), Petitioner explained that in the amended petition he "will allege ineffective assistance of counsel as 'cause' for appellate counsel's failure to pursue those claims in the subsequent petition for discretionary review." (*Id.* at 2.) The Court granted Petition's motion, thus granting him leave to file an amended petition,

---

[12]    Because of the difference between felony murder jurisprudence in Illinois law, and more generic accountability principles that otherwise may also apply, Petitioner's citation of *Fagan v. Washington,* 942 F.2d 1155 (7th Cir. 1991), is inapposite. That decision took pains repeatedly to make clear that the case was not a felony-murder case. *See, e.g., id.* at 1159, 1160. It also expressly and repeatedly suggested that the outcome may have been different if it had been a felony-murder case. *See, e.g., id.* at 1160 ("Quite possibly Fagan could have been successfully prosecuted for murder under a different theory, that of felony murder.").

27

but in that amended petition, Petitioner presented no developed cause-and-prejudice argument, but instead simply referenced back to his motion for leave to amend, where he had promised that the actual argument would be forthcoming. (D.E. 26 at 20.) This would not appear to be a sufficient showing of cause. Moreover, precedent teaches that a claim that ineffective assistance was sufficient cause for a procedural default can itself be procedurally defaulted if it is not properly presented to state courts, as appears to be the case here. *See Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000); *Dellinger*, 301 F.3d at 766-67. Finally, because all of Petitioner's claims are meritless, as explained immediately below, he has not shown any prejudice or miscarriage of justice.

Even if one were to excuse Petitioner's procedural default, Petitioner's challenges in this area are meritless. Petitioner's first claim of this sort is that the Illinois felony-murder provision is at odds with federal law, which requires that every element of a crime must be determined beyond a reasonable doubt. (D.E. 26 at 16 (citing *In Re Winship*, 397 U.S. 358, 365) (1970).) Petitioner asserts that his Due Process rights were violated because "homicide in the first-degree requires a specific intent to kill" and the indictment "did not allege that he intentionally shot or killed the victim." (*Id.*) In essence, Petitioner is claiming that felony-murder statutes are unconstitutional because Due Process demands that the definition of first-degree murder include a specific intent requirement.

Even if the claim were not defaulted, it would fail on the merits. While it is true that first-degree murder in Illinois is typically a specific-intent crime (in that most first-degree murders are not felony murders), this is a product of how the State's criminal law statutes and jurisprudence have developed, not a constitutional mandate or prohibition against the existence of the crime of felony murder. *See Hopkins v. Reeves*, 524 U.S. 88, 99-100 (1998) (States with

felony murder statutes need not include a *mens rea* requirement with respect to the killing in order to secure a conviction; only in order to execute a defendant must the State prove that the defendant intended to kill or was recklessly indifferent to that outcome); *see also Tison v. Arizona*, 481 U.S. 137, 144 (1987) (upholding constitutionality of death penalty for felony-murderer, where defendant was at least recklessly indifferent to death of a victim and was not a minor participant, and adding that "some nonintentional murderers may be among the most dangerous and inhumane of all . . . Indeed it is for this very reason that the common law and modern criminal codes alike have classified behavior such as occurred in this case [*i.e.*, felony murder] along with intentional murders."). Thus, in this non-capital case, there is no constitutional barrier to Illinois statutorily defining felony murder as first-degree murder, which Illinois has done in 9-1(a)(3).

Petitioner also cites *Winship* for the proposition that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." (D.E. 26 at 16 (citing *Winship*, 397 U.S. at 364).) While Petitioner correctly states the rule of *Winship*, he fails to explain how Illinois's felony-murder provision, or its application at Petitioner's trial, runs afoul of *Winship's* command. To convict on felony murder in Illinois, the State has the burden to prove beyond a reasonable doubt (1) the death of an individual; (2) that the Defendant's acts caused the death; and (3) that the death resulted from acts undertaken during the attempt or commission of a forcible felony other than second degree murder. 720 ILCS 5/9-1. In the case *sub judice*, the State met its burden with respect to all three of the elements. The State offered evidence that Maurice Young died (D.E. 19, Ex. H at 2), that his death was proximately caused by Petitioner firing his weapon at McGhee (*id.*), and that this transpired while Petitioner was committing the forcible felony of

aggravated discharge of a firearm. (*Id.*) The felony-murder provision does not require a specific intent to kill the victim, so the State did not have to prove this element beyond a reasonable doubt at trial. *See, e.g., People v. Chandler*, 543 N.E.2d 1290, 1296 (Ill. 1989) (collecting Illinois authorities).

Petitioner also cites to *People v. Morgan*, 758 N.E.2d 813 (Ill. 2001) and *People v. Pelt*, 800 N.E.2d 1193 (Ill. 2003), as support for his argument. Petitioner cited neither of these decisions, nor made the argument he offers here, to the Illinois Court of Appeal in the petition for rehearing or in Petitioner's leave to appeal to the Illinois Supreme Court. As a result, this argument also is not properly presented here, given his failure to establish cause.

In any event, the argument is meritless. Those cases stand for the proposition that the predicate felony underlying a charge of felony murder must involve conduct with a felonious purpose other than the killing itself. In *Morgan*, the defendant was convicted of felony murder predicated upon aggravated battery and aggravated discharge of a firearm as to the victim. *Id.*, 758 N.E.2d at 836. The Illinois Supreme Court reversed the felony-murder conviction because Defendant did not commit aggravated battery or aggravated discharge of a firearm independent of the shots that killed the victim—both predicates arose from and were inherently part of the murder. *Id.* In *Pelt*, the Defendant was found guilty of felony-murder predicated upon aggravated battery of a child. 800 N.E.2d at 1194. The defendant admitted that he had thrown the infant towards his bed and that the infant hit the dresser. The coroner testified that trauma from the baby's collision with the dresser was the cause of death. The Illinois Supreme Court affirmed the appellate court's dismissal of the felony-murder conviction because "the act of throwing the infant forms the basis of defendant's aggravated battery conviction, but it is also the same act underlying the killing." *Id.* at 1197. This case involved a materially different

scenario—Petitioner was shooting in the direction of and endangering people (for example, McGhee), but his shooting was not the cause of the baby, Maurice's, death, as McGhee fired the fatal shots. *Accord McGee*, 801 N.E. 2d at 953 (holding that *Morgan* and *Pelt* were inapposite, in affirming felony murder conviction of Petitioner's co-defendant, because McGhee's underlying ADF offense related to shooting at Petitioner, not shooting at the baby); *id.* ("Thus, it is not difficult here to conclude that the predicate felony underlying the charge of felony murder involved conduct with a felonious purpose other than the conduct which killed the baby").

Finally, Petitioner argues that his Due Process rights were violated because the State failed to prove him accountable for McGhee's acts. This claim is moot because the appellate court reversed Petitioner's conviction for ABF that was premised upon accountability principles. With respect to the ADF conviction, the appellate court determined that Petitioner committed the offense when he shot at McGhee, not that Petitioner was responsible under generic accountability principles for McGhee's shots at others. (D.E. 19, Ex. H at 8-13.) Petitioner may be arguing that he cannot be held liable for Maurice's death because he did not share a "common design" with McGhee, but the basis for his first-degree murder conviction was not accountability under 720 ILCS 5/5-2, but rather the felony-murder rule, codified in 720 ILCS 2/5-9. This argument largely speaks ultimately to questions of state law (that are not properly the basis for federal habeas relief), but the argument is meritless in any event. As noted previously, a person who commits a forcible felony is responsible for "direct and foreseeable consequences" of the felony. *See Lowery*, 687 N.E.2d at 975-77. The Illinois Supreme Court has determined repeatedly that a person who commits aggravated discharge of a firearm may be held accountable for the death of a bystander due to return fire because that result is a direct and foreseeable consequence of shooting a firearm at someone. *See, e.g.*, *Chandler*, 543 N.E.2d at 1296. As explained in

*Lowery*, "it is unimportant that defendant did not anticipate the precise sequence of events that followed his robbery attempt . . . [D]efendant's unlawful acts precipitated those events, and he is responsible for the consequences." 687 N.E.2d at 978 (citing *Chandler*, 543 N.E.2d at 1296, *People v. Smith*, 307 N.E.2d 353, 355 (1974).) *Lowery* also concluded that "'those who commit forcible felonies know they may encounter resistance, both to their affirmative actions and to any subsequent escape.'" *Id.* at 978 (quoting *People v. Hickman*, 59 Ill. 2d 89, 94 (Ill. 1974)). Thus, the trial court was correct to find Petitioner guilty of first-degree murder, and Petitioner's first-degree felony murder conviction was not premised upon the accountability principles in 720 ILCS 5/5-2.

## CONCLUSION

For the aforementioned reasons, federal habeas relief not warranted. Consequently, the Petition for a Writ of Habeas Corpus is denied.

So ordered

Mark Filip
United States District Judge
Northern District of Illinois

Dated: __11/4/05__