IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

THOMAS DONVAL )
(a/k/a DONYAL/DONVAL THOMAS), )
 )
Petitioner, )
 ) No. 05 C 1501
v. )
 ) Judge Mark Filip
NEDRA CHANDLER, )
 )
Respondent. )

MEMORANDUM OPINION DENYING APPLICATION
FOR A CERTIFICATE OF APPEALABILITY

On November 4, 2005, the Court denied Thomas Donval's ("Donval") Petition for a Writ of Habeas Corpus. (D.E. 32, 33.) Donval subsequently filed an application for a Certificate of Appealability ("COA") and an application to proceed *in forma pauperis*. (D.E. 36, 39.) For the reasons explained below, Donval's application to proceed *in forma pauperis* is granted and his request for a COA is respectfully denied.

BACKGROUND

In September of 1997, Donval was a member of the Conservative Vice Lords, a Chicago street gang.[1] (D.E. 19, Ex. H at 4.) James McGhee ("McGhee") was a high-ranking member of the Mafia Insanes, a rival gang that operated in proximity to the Conservative Vice Lords. (*Id.*) On or about September 12, 1997, Donval and some fellow Conservative Vice Lords "beat up" David Brown ("Brown"), a member of the Mafia Insanes who was friends with McGhee. (*Id.*)

---

[1] The facts are taken from the Illinois appellate court's resolution of Petitioner's direct appeal. *See, e.g., Ashford v. Gilmore*, 167 F.3d 1130, 1131 (7th Cir. 1999) (citing 28 U.S.C. § 2254(e)(1)). Docket entries are designated as "D.E. ___," followed by the appropriate district court docket number.

On September 18, 1997, Brown and McGhee were driving in McGhee's Chevrolet Lumina, looking for Donval. (*Id.* at 2, 4-5.) At the same time, Donval and a friend named "Bowlegs"[2] were walking with Ms. Ashley Brown ("Ashley") and Ms. Sarah Young ("Sarah") to a store. (*Id.* at 2.) Sarah was wheeling her eighteen-month-old son, Maurice ("Maurice"), in a stroller. Donval lagged behind the group as they walked. (*Id.*)

As the group approached Chicago and Lawndale, Donval ran toward the group, telling them to "move, move, move, back, back, back." (*Id.*) Sarah, thinking Donval was joking, did not step aside. (*Id.*) Donval moved to the side of a church, pulled out a gun from underneath his shirt, and shot in the direction of McGhee and Brown. (*Id.*) McGhee fired from the driver's side of the car in Donval's direction. (*Id.* at 2, 4.) The shots fired from McGhee's gun injured Sarah and killed Maurice, the infant boy. (*Id.* at 5.)

Donval was indicted on a number of charges, including first-degree murder (felony murder with multiple predicates), aggravated discharge of a firearm ("ADF"), aggravated battery with a firearm ("ABF"), aggravated battery, and mob action. (*Id.* at 1.) With respect to the ADF charges, the indictment identified the offender (*i.e.*, Donval), the name and statutory basis of the offense, and the date, time and place of the offense; the intended targets of Donval's shots were identified as Ashley and Keith Tiggs, not McGhee. (*Id.* at 9-10; *id.*, Ex. A at C16, C17 (Count 8 and Count 9 of the grand jury indictment).)

Donval was tried in a joint bench trial with co-defendant McGhee. (*Id.*, Ex. H at 1.) At trial, Donval did not dispute that he discharged a firearm; indeed, his attorney affirmatively

---

[2] "Bowlegs" actual identity was not verified at trial, but he is believed to be Keith Tiggs. *See* D.E. 19, Ex. H at 2 n.2.

2

asserted that Donval acted in self-defense and in defense of others.[3] (*Id.* at 12.) The main issue at trial was whether Donval was the initial aggressor.[4] (*Id.*) To rebut Donval's self-defense claim, the State offered Sarah's testimony that Donval fired first, and that McGhee returned fire. (*Id.* at 3.) In addition, the State offered Brown's testimony that Donval fired the first shots and McGhee began firing in response. (*Id.* at 29-30.)

The circuit court found Donval guilty of felony murder premised on ADF, felony murder premised on mob action, ABF, aggravated battery of Young, and mob action. (*Id.* at 6-7.) Donval was sentenced to thirty-five years imprisonment. (*Id.*)

On direct appeal, Donval raised a number of issues; however, only four are relevant to his pending request for a COA. (*Id.* at 1-2.) First, Donval in his direct appeal argued that his mob violence conviction should be reversed because he was not "acting together" with McGhee, his gang rival. (*Id.* at 15-16.) The appellate court agreed and vacated his convictions for mob action and for felony murder based on mob action. (*Id.* at 17-18.)

Second, Donval sought reversal of the ABF and aggravated battery convictions on the grounds that he did not shoot Sarah and that he was not McGhee's accomplice under an accountability theory because there was no overt act. (*Id.* at 19.) Again, the appellate court agreed and vacated his aggravated battery convictions. (*Id.* at 20.) The appellate court reasoned that Donval "shared no common design with McGhee" and thus was not responsible for

---

[3] Donval did not testify and no evidence was presented by the defense. (D.E. 19, Ex. H at 6.) However, his theory of defense was that "he acted in self-defense and in defense of others." (*Id.* at 12.)

[4] The Illinois Court of Appeals explained that Illinois law does not permit preemptive self-defense or defense of others when the party that would seek to involve it was the aggressor, so the State could refute Donval's defense by proving beyond a reasonable doubt that he was the aggressor. (*See, e.g.*, D.E. 19, Ex. H at 22-23 (collecting Illinois cases); *see also id.* at 24.)

3

McGhee's commission of aggravated battery. (*Id.*)

Third, Donval argued that the indictment for the underlying felony of ADF was faulty because it charged him with ADF in the direction of Ashley and Tiggs but the State did not prove at trial that he fired a weapon in their direction. (*Id.* at 2.) The Illinois Court of Appeals affirmed Donval's felony murder conviction premised on ADF. (*Id.* at 12, 14.) The appellate court acknowledged that the indictment charged that Donval had fired in the direction of Ashley and Tiggs. (*Id.* at 10.) However, the appellate court noted that the salient issue was "whether the variance between the indictment and the proof at trial was a 'fatal' variance resulting in undue prejudice to the defendant." (*Id.*) The appellate court concluded that the variance at issue was not fatal because Donval "was not unfairly surprised at trial, his defense was not required to be altered or compromised, and double jeopardy prohibits his retrial for the underlying offense of ADF as to McGhee or Brown." (*Id.* at 11.) Once it determined that Donval was guilty of ADF, the appellate court reasoned that Donval was guilty of felony murder with ADF as the predicate. (*Id.* at 14.)

Finally, Donval claimed that the State failed to rebut his affirmative defense of self-defense beyond a reasonable doubt. (*Id.* at 22.) The appellate court rejected this claim because the State proved beyond a reasonable doubt that Donval was the aggressor, which negated one of the elements of the defense. (*Id.* at 23.) The appellate court noted that while Donval made an effort to get other members of the group out of the line of fire, he fired the first shot, and Illinois law did not permit the defendant to engage in preemptive self-defense or such defense of others. (*Id.*; *see also id.* ("[S]elf-defense does not afford defendant license to defeat potential aggression through initiating violence.").)

Following the appellate court's ruling, Donval filed a petition for rehearing which argued

4

that the appellate court had *sua sponte* raised the variance issue and had failed to consider the applicable state and federal constitutional standards governing indictments. (*See id.*, Ex. I at 12.) The petition for rehearing cited *Peters v. Kiff*, 407 U.S. 493 (1972), for the proposition that "the validity of an indictment is subject to measurement against general fourteenth amendment guarantees of due process." (D.E. 19, Ex. I at 12.) The petition also cited *United States v. Harris*, 457 F.2d 191, 197 (7th Cir. 1972), as the governing case for determining the constitutional requisites of an indictment. (D.E. 19, Ex. I at 12-13.) The appellate court denied the petition for reconsideration four days later. (*Id.*, Ex. J.) Donval then filed a petition for leave to appeal to the Illinois Supreme Court, which was denied on March 24, 2004. (*Id.*, Ex. L.) The only issue raised in the petition for leave to appeal to the Illinois Supreme Court was the propriety of the appellate court's *sua sponte* conversion of Donval's reasonable doubt claim into a variance claim. (*See id.*, Ex. K.)

On March 14, 2005, Donval filed a petition for a writ of habeas corpus in the District Court for the Northern District of Illinois; he subsequently filed an amended petition. (D.E. 26.) Donval's petition sought habeas relief on the grounds that (1) the Illinois Court of Appeals deprived him of due process of law when it "improperly amended" a grand jury indictment in affirming his conviction ("Fatal Variance Claim") and (2) the state failed to prove its case beyond a reasonable doubt, which denied him due process of law ("Reasonable Doubt Claim"). Donval ultimately withdrew the Fatal Variance Claim in a pleading titled "Notice by Petitioner of Voluntary Dismissal of Ground One." (D.E. 31.) In spite of Donval's motion to withdraw and/or abandon the Fatal Variance Claim, in an abundance of caution the Court considered the merits of both claims and determined that neither provided a basis for habeas relief. (D.E. 33 at 1, 13.)

5

Following the denial of his habeas petition, Donval moved for the Court to issue a COA. (D.E. 39.) On March 20, 2006, Donval filed what the Court will treat as an amended application for a COA. (D.E. 40.) To ensure that Donval's claims have gotten full consideration, the Court will address the issues raised in both the original and the amended COA request.

I. Standard of Review

The procedures for appealing the denial of a habeas petition are governed by Fed. R. App. P. 22(b) and 28 U.S.C. § 2253. Rule 22(b) provides that:

> "In a habeas corpus proceeding in which the detention complained of arises from process issued by a state court, or in a 28 U.S.C. § 2255 proceeding, the applicant cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c). If an applicant files a notice of appeal, the district judge who rendered the judgment must either issue a certificate of appealability or state why a certificate should not issue."

Section 2253 of Title 28 authorizes a district or circuit judge to issue a COA when "the applicant has made a substantial showing of the denial of a constitutional right." When a district court has denied a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a district court has denied a petitioner's claims on procedural grounds "without reaching the prisoner's underlying constitutional claim," a COA should issue if reasonable jurists could debate whether the petition states a valid claim of the denial of a constitutional right and whether the district court was correct in its procedural ruling. *Id.* at 478. While a petitioner seeking a COA need not demonstrate that he will prevail in order to receive a COA, he or she "must prove something more than the absence of frivolity or the existence of mere good faith on his or her part." *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003) (internal quotation marks and citation omitted). In assessing the factual basis for a claim, the Court presumes that "[f]actual determinations of a

6

state court are . . . correct and hence not 'unreasonable,' unless a petitioner can show otherwise by clear and convincing evidence." *Conner v. McBride*, 375 F.3d 643, 649 (7th Cir. 2004) (collecting cases).

II.     Issues Raised in the Application

    A.     Procedural default and waiver

Donval's COA application challenges the Court's procedural ruling that the Reasonable Doubt Claim was procedurally defaulted because Donval failed to present it in his petition for leave to appeal to the Illinois Supreme Court. (D.E. 36 at 2.) Donval argues that the Court should have excused the default because it was due to an objective factor external to him, *i.e.*, the Illinois appellate court. (*Id.* at 3.) In finding that the Reasonable Doubt Claim had been defaulted, the Court explained that Donval failed to present the claim for a *full round* of appellate review, which includes presentation in a petition for leave to appeal to the Illinois Supreme Court. *See Dellinger v. Bowen*, 301 F.3d 758, 766-767 (7th Cir. 2002). Even if Donval is correct that he could not have raised the claim until after the Illinois appellate court raised the issue *sua sponte*, he was still obligated to either present the claim to the Illinois Supreme Court as the final step in his direct appeal or to raise it in a full round of post-conviction proceedings. *See id.* Donval did neither, and since Illinois law would not permit him to raise the claim at the present time (the applicable limitations period has run), it is procedurally defaulted. With respect to any claim that default should be excused to avoid a fundamental miscarriage of justice, Donval bears the burden of proving that "the constitutional violation has probably resulted in a conviction of one who is actually innocent." *See id.*; *see also Buie v. McAdory*, 341 F.3d 623, 626-27 (7th Cir. 2003). As discussed *infra*, Donval most certainly was guilty of ADF in the direction of McGhee, and thus could be convicted of felony murder because of the foreseeability

7

of an innocent bystander being struck by stray gunfire. Consequently, no reasonable jurist would find debatable the Court's rulings on procedural default and waiver. And, as explained in this Court's original habeas opinion, even if the procedural default were excused, the claim is meritless under settled federal law. *See* D.E. 33 at 28.

B. Fatal variance

Donval seemingly abandoned the Fatal Variance claim in his prior filings (*see* D.E. 31, 39) but has recently (perhaps) attempted to revive this claim. (D.E. 40. at 4-5.) The Court will resolve this ambiguity in his favor for present purposes. In this regard, Donval claims that the Court "failed to explain how the inapplicability of the Grand Jury Clause obviates the requirement" that an indictment comports with general standards of due process. (*Id.* at 3 (citing *Peters v. Kiff*, 407 U.S. 496, 496 (1972).) Donval also objects to the Court's reliance upon *Bae v. Peters*, 950 F.2d 469, 478 (7th Cir. 1991) because it is not "clearly established law as determined by the United States Supreme Court." (D.E. 40 at 4 (citing 28 U.S.C. § 2254(d)(1).) Both claims lack merit.

Donval incorrectly alleges that the Court did not address his due process claim independent of whether the Grand Jury Clause applies to state criminal prosecutions. (*See* D.E. 33 at 21 ("While the Grand Jury Clause does not apply to criminal prosecutions by state governments, precedent teaches that a charging document must satisfy the Fourteenth Amendment's requirement of due process of law. *See Bae*, 950 F.2d at 478."); *see also* D.E. 33 at 22 ("With respect to the adequacy of an indictment, the due process inquiry is two-fold: (1) did the defendant receive adequate notice of the charges and (2) did the defendant have the ability to defend himself against the crime charged.").) In rejecting Donval's claim, the Court agreed with the Illinois appellate court that "(1) [Donval] was not unduly surprised at trial; (2) [Donval's]

8

defense at trial was not altered or compromised because he was required by the evidence to claim self-defense; and (3) [Donval] faced no legitimate fears concerning double jeopardy or any vagueness in that regard)." (*Id.* (citing D.E. 19, Ex. H at 10-15).) Donval does not meaningfully challenge any of these findings and thus fails to demonstrate the potential for a substantial violation of his constitutional rights about which reasonable jurists would engage in debate.

Donval also incorrectly asserts that the Court may not rely upon Seventh Circuit precedent (as opposed to Supreme Court precedent) as a basis for denying habeas relief. AEDPA limited the grounds upon which a federal court was permitted to *grant* habeas relief, but it did not purport to limit the grounds upon which a federal court could *deny* habeas relief. *See* 28 U.S.C. § 2254(d)(1) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."). No reasonable jurist would debate whether, under AEDPA, a habeas corpus claim can be defaulted or negated under binding federal appellate precedent, notwithstanding that such precedent has not been specifically affirmed (or the applicable principle specifically adopted) by the United States Supreme Court.

C. Accountability vs. felony murder

Donval also argues that the Court's merits determination was erroneous because his "conviction for felony-murder was sustained on a theory of accountability" and the evidence that he acted in self-defense was sufficient to prove that he lacked the sufficient mental state for first-degree murder. (D.E. 36 at 4.) However, provided that Donval's conviction for ADF was valid,

no reasonable jurist would find the Court's assessment of the issues wrong because the evidence presented at trial was indisputably sufficient to sustain a conviction of felony murder predicated upon ADF.

In this regard, the Illinois felony-murder provision, 725 ILCS 5/9-1, does not require a specific intent to kill the victim, so the State did not have to prove this element beyond a reasonable doubt at trial. *See, e.g., People v. Davis*, 821 N.E.2d 1154, 1161 (Ill. 2004) ("The lack of an intent to kill for felony murder distinguishes it from the other forms of first degree murder, which require the State to prove either an intentional killing or a knowing killing."). Instead, to sustain a felony-murder conviction, the State must prove beyond a reasonable doubt (1) the death of an individual; (2) that the Defendant's acts caused the death; and (3) that the death resulted from acts undertaken during the attempt or commission of a forcible felony other than second degree murder. 720 ILCS 5/9-1. The State proved all of these elements beyond a reasonable doubt at trial of this case.

Under Illinois law, ADF is a forcible felony that serves as a predicate felony for a felony-murder charge, provided that the ADF is not inherent in the fatal shooting. *See* 720 ILCS 5/2-8; *People v. Morgan*, 758 N.E.2d 813, 838 (Ill. 2001). While every shooting necessarily involves the discharge of a firearm, the evidence at trial demonstrated that Donval fired in the direction of McGhee, an act that was not inherent in the death of the victim, an innocent bystander. In addition, a person who commits a forcible felony is responsible for "direct and foreseeable consequences" of the felony. *People v. Lowery*, 687 N.E.2d 973, 975-77 (Ill. 1997). It is beyond reproach that the death of a bystander is a direct and foreseeable consequence of aggravated discharge of a firearm. *See, e.g., People v. Chandler*, 543 N.E.2d 1290, 1296 (Ill. 1989); *Lowery*, 687 N.E.2d at 978.

Donval's argument is based upon the mistaken premise that his first-degree murder conviction was premised upon the accountability principles in 720 ILCS 5/5-2. Under that provision, a person is not accountable for the acts of another in the absence of a common design. However, 720 ILCS 5/5-2 is not the only mechanism by which a person can be held "accountable" for the acts of another. Under the felony-murder statute, a person may be responsible for a killing that occurs during the commission of a forcible felony even if that person is not acting in concert with the shooter. *See, e.g., Lowery*, 687 N.E.2d at 978.

Donval seemingly concedes as much in his most recent filing (*see* D.E. 40 at 10-11), which further suggests, assuming that the Fatal Variance Claim is even at issue, that no reasonable jurist would find that the Donval's guilt was not proven beyond a reasonable doubt. In any event, the claim is not the proper subject of a COA.

D.   Self-defense and provocation

Donval argues that "where a provocation defense was available to a defendant charged with felony murder at the time of his trial, the District Court was wrong in concluding that the State was not required to prove that an intentional murder was committed–particularly where Petitioner's theory of self-defense was entertained at trial." (D.E. 36 at 4 (citations omitted).) As explained in the previous section, the felony murder rule does not require that the State prove that the killing was intentional. This explains why involuntary manslaughter is not a lesser-included offense of felony murder. *See People v. Weathers*, 309 N.E.2d 795, 801 (Ill. App. Ct. 1974) ("It follows, then, that it would be impossible for one committing a homicide during the course of a forcible felony to be guilty of manslaughter. In the present case the defendant admitted participation in a planned armed robbery. Therefore, it would have been impossible for the jury to have found him guilty of manslaughter or reckless conduct, and any conjecture as to the

11

precise circumstances under which the gun was discharged is immaterial.")

At times, Donval is possibly suggesting that the felony-murder rule is unconstitutional. (*See* D.E. 40 at 9.) Not only is this claim procedurally improper, as it was never raised in state court nor in the original habeas petition, it is also substantively meritless. *See Hopkins v. Reeves*, 524 U.S. 88, 99-100 (1998) (States with felony murder statutes need not include a *mens rea* requirement with respect to the killing in order to secure a conviction; only in order to execute a defendant must the State prove that the defendant intended to kill or was recklessly indifferent to that outcome); *see also Tison v. Arizona*, 481 U.S. 137, 144 (1987) (upholding constitutionality of death penalty for felony-murderer, where defendant was at least recklessly indifferent to death of a victim and was not a minor participant, and adding that "some nonintentional murderers may be among the most dangerous and inhumane of all . . . Indeed it is for this very reason that the common law and modern criminal codes alike have classified behavior such as occurred in this case [*i.e.*, felony murder] along with intentional murders.").

In his "amended" request for a COA, Donval "clarifies" his argument as meaning that the State never proved that he intentionally committed ADF, the predicate felony. (D.E. 40 at 10.) Donval's reasoning is that because he acted in self-defense, he lacked the necessary mental state to support an ADF conviction. (*Id.* at 8.) Donval also suggests that he could not have been the initial aggressor because McGhee's conviction was premised upon McGhee being the initial aggressor. (*Id.*)

Donval's argument with respect to "intent" suffers from three fatal and clear defects. First, it was not presented as such in the original habeas petition and thus was waived. Moreover, even if it had been raised in the habeas petition, it still would have been procedurally defaulted because Donval did not present a self-defense claim in his petition for leave to appeal

12

to the Illinois Supreme Court, meaning that the issue was not presented for a full round of appellate review. (*See* D.E. 19, Ex. K.)

Second, the trial court squarely held that Donval was the aggressor and the Illinois Court of Appeals affirmed that holding. (*Id.*, Ex. H at 23-24 (explaining that the evidence permitted the trial court/factfinder to conclude that self-defense had been rebutted beyond a reasonable doubt by the State of Illinois).) As the Court explained previously, the main issue at trial was Donval's self-defense claim, which was rejected because Sarah and Brown testified that Donval fired first, and Donval did not testify and presented no evidence supporting his version of the events. (*Id.* at 3-4, 29-30.) Donval submitted to the Court a Chicago Tribune story stating that "[McGhee and Brown] started shooting at [Donval], who returned fire." (*See* D.E. 40, Ex. A.) Not surprisingly, Donval does not identify any legal principle that would permit the Court to overturn a verdict based upon a reporter's after-the-fact summary of the proceedings. Given that Donval does not allege that the reporter personally witnessed the shootout, the Court cannot see how the reporter could competently state that McGhee and Brown fired first, especially since the only evidence at trial pointed to Donval as the aggressor.

Donval suggests that an evidentiary hearing is necessary to consider evidence from a police report that would have established that Donval acted in self-defense. (D.E. 40 at 9.) Section § 2254(e) of Title 28 precludes a district court from holding an evidentiary hearing unless "the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or a factual predicate that could not have been previously discovered through the exercise of due diligence; and the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the

13

underlying offense." The police report is not new evidence; Donval referenced it extensively on direct appeal. (*See* D.E. 19, Ex. A at 57-58.) Furthermore, the police report in question was relevant in that it provided a potential basis to perfect impeachment of Ms. Young, who along with Brown, testified at trial that Donval was the aggressor. The Illinois Court of Appeals thoroughly analyzed the police report issue, which was raised in the context of a *Strickland* claim that has not even been renewed here. The Illinois Court of Appeals first found that the issue had not been properly presented in the trial court. (*Id.*, Ex. H at 26.[5]) The Illinois Court of Appeals also rejected the notion that the police report issue provided a basis for an ineffective assistance claim, as it did not satisfy either of the prongs of the *Strickland* analysis, including the prejudice prong. (*See, e.g., id.* at 29 ("Defendant was not prejudiced as a result of counsel's failure to perfect the impeachment."); *id.* at 30 ("Defendant was not prejudiced by counsel's performance . . . .").) This issue does not provide a basis for debate among reasonable jurists, at least in this Court's view, about whether Donval should have his conviction vacated under AEDPA. *See, e.g., Murrell v. Frank*, 332 F.3d 1102, 1111-12 (7th Cir.2003) (collecting Seventh Circuit precedent).

Third, to the extent that Donval is arguing that he did not intentionally commit ADF (separate from his self-defense claim), his claim is without foundation. 720 ILCS 5/24-1.2 provides that "[a] person commits aggravated discharge of a firearm when he or she knowingly or intentionally . . . discharges a firearm in the direction of another person or in the direction of a vehicle he or she knows or reasonably should know to be occupied by a person." Donval's self-

---

[5] The Illinois Court of Appeals stated: "Defendant claims counsel failed to perfect the impeachment of Young by not confronting her with the police report . . . . Notably, although defendant did attach the police report, the motion is devoid of any reference to counsel's failure to impeach Young. Not having been before the circuit court, it cannot now be said that the court failed to examine a matter never raised." (D.E. 19, Ex. H at 26.)

defense claim is as follows: he saw McGhee and Brown coming, they fired first, and then he returned fire. (*See, e.g.,* D.E. 19, Ex. E at 56.) In light of this defense, Donval cannot maintain that he did not know that McGhee and Brown were in the Chevrolet Lumina.

With respect to Donval's claim in his amended COA that both he and McGhee could not have been the initial aggressor (D.E. 40 at 8), as the State purportedly asserted, a reading of the Illinois appellate court's decision in McGhee's appeal demonstrates that the State's theories were not mutually exclusive, or even inconsistent. *See People v. McGee*, 801 N.E. 2d 948, 951-952 (Ill. App. Ct. 2003). In assessing McGee's self-defense claim, the appellate court reasoned as follows:

> We find that the trier of fact could reasonably find that defendant was not acting in self-defense when he discharged his firearm. In looking at this evidence in the light most favorable to the State, the defendant was driving around looking for Thomas and the other Conservative Vice Lords who had beaten up Brown. The defendant was carrying a gun. When the defendant saw Thomas approaching the car with a gun, the defendant did not drive away. Instead, the defendant pulled his gun out and immediately shot back. Then, rather than drive away, the defendant got out of the car and continued shooting at Thomas. Thomas may have fired the first shot, but as Brown testified, the defendant shot back immediately so that it sounded like one gun being fired. A rational trier of fact could find that the defendant was in fact looking for the opportunity to shoot Thomas and that he did not fire his gun in self-defense but, rather, was just as much the aggressor as was Thomas.

*Id.* at 952. As is clear from the above quotation, the legal bases for Donval's and McGhee's convictions are not inconsistent. Donval was the initial shooter and thus could not claim self-defense. However, McGhee was "just as much the aggressor" because he was looking for Donval while armed, and, McGhee, rather than drive away after returning fire, got out of the car and continued firing at Donval. *Id.* Under such circumstances, it was permissible (and certainly not subject to reversal on habeas corpus review under AEDPA) for the court/factfinder to determine that neither person could successfully argue self-defense or defense of others. Illinois

law teaches—as common sense would suggest—that when two armed gang members readily engage in an open-air gun fight, it is not necessarily the case that one of them will have a successful self-defense claim under the criminal law. *See, e.g., People v. White*, 687 N.E.2d 1179, 1181-82 (Ill. App. Ct. 1997) ("We note at the outset that there is evidence that defendant, the victim, or both could have been the aggressor at the moment of the shooting. We do not believe either's behavior was reasonable or necessary, regardless of who actually fired first. This case appears to be a mutual combat situation, where both parties fought willingly upon equal terms. The perfect defense of self-defense is not available in such a situation.").

The standard for issuance of a COA certainly does not require a habeas applicant to show that he is more likely to win than lose on appeal. *See, e.g., Miller-El*, 537 U.S. at 338. Nonetheless, the COA process is designed to impose a "threshold" or "gateway" test to sort (at least potential) wheat from (clear) chaff for purposes of appeal. *Id.* at 337; *see also id.* ("By enacting AEDPA . . . Congress confirmed the necessity and the requirement of differential treatment for those appeals deserving of attention from those that plainly do not. It follows that issuance of a COA must not be *pro forma* or a matter of course."). In this regard, the Supreme Court has taught the mere existence of good faith on the part of the habeas petitioner is not enough, (*id.* at 338), nor is the mere "absence of frivolity" in the petitioner's position. *Id.* In sum, this case is not, at least in this Court's view, one in which reasonable jurists would find debatable the rejection of Mr. Donval's habeas claims under the standards of the AEDPA. *See id.* Accordingly, denial of the request for a COA is appropriate.

## CONCLUSION

For the aforementioned reasons, Mr. Donval has failed to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253. He also has failed to meet the applicable standards for issuance of a COA. Accordingly, the application for a Certificate of Appealability is respectfully denied.

So ordered

*Mark Filip*
Mark Filip
United States District Judge
Northern District of Illinois

Dated: *April 12, 2006*